**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Warren R. Picard

    v.                                                Civil No. 05-cv-234-SM

Hillsborough County Department
of Corrections, et al.

**REPORT AND RECOMMENDATION**

    Proceeding *pro se* and *in forma pauperis*, plaintiff Warren R. Picard brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants have abridged his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution (document no. 1). Named as defendants are several officers and employees of the Hillsborough County Department of Corrections ("HCDOC").[1]

    The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S.

---

[1] The following HCDOC officers and employees are named as defendants in the body of the complaint: Superintendent James O'Mara; Classification Supervisor William Raymond; HCDOC Medical Department; Medical Doctor Ward; Nurse Jane Doe; and Corrections Officer Richards, Dickerson, Shultz, Gordon, Cruze, Grizil and John Doe.

District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I find that Picard has alleged an Eighth Amendment excessive use of force claim against Richards (Count II) and First Amendment retaliation claims against Raymond and Richards (Counts II and III). I recommend dismissal of all remaining claims.

Picard's motion for reconsideration (document no. 15) is denied as moot as he is no longer incarcerated and has failed to show cause why his request for preliminary injunctive relief should be granted.

## Standard of Review

In reviewing a *pro se* complaint, this court must construe the pleading liberally and in favor of the *pro se* litigant. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)). At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review

ensures that *pro se* pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).

## Background

Construing the complaint in the light most favorable to Picard, the material facts are as follows.  Picard was released from the HCDOC on October 18, 2005.  This action stems from a series of events that occurred during his incarceration at the HCDOC in 2004 and 2005.  During that time, prison officials allegedly subjected him to numerous constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

Defendants allegedly violated Picard's rights by denying him adequate medical care, subjecting him to excessive use of force and retaliation and failing to protect him from attack by other inmates.  Defendants further violated his rights by denying him certain security classifications in retaliation for his prosecution of civil rights actions against the HCDOC.

Picard brings this action pursuant to Section 1983, alleging that defendants' acts and omissions rise to the level of constitutional deprivations under the First, Eighth and

Fourteenth Amendments.

## Discussion

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). The premise of Picard's Section 1983 action is that prison officials subjected him to the following constitutional deprivations in violation of his federally protected rights under the First, Eighth and Fourteenth Amendments.

   A. Eighth Amendment Claims

      1. Denial of Adequate Medical Care

Picard alleges that while he was incarcerated at the HCDOC in 2004, Dr. Ward and Nurse Jane Doe denied him an adequate tuberculosis screening test. Because of his allergy to the

4

tuberculosis skin test, he required a chest x-ray in order to rule-out the disease.  Rather than providing Picard with a current chest x-ray, defendants allegedly relied upon a chest x-ray taken in 2002[2], which confirmed that he had tested negative for tuberculosis.  According to Picard, defendants' actions rise to the level of deliberate indifference to his medical needs in violation of the Eighth Amendment (Count I).

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  See Estelle, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104-05.

---

[2]The 2002 chest x-ray was taken during Picard's prior incarceration at the HCDOC.

The Eighth Amendment is not coterminous with a medical malpractice claim.  See Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  "[C]ourts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment."  Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).

As to the second element, "[a] 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990)).  "Inadequate treatment of a serious nature can qualify," Forbes, 112 F.3d at 266, as can the exposure of inmates to a serious, communicable disease that poses an unreasonable risk of serious damage to the prisoner's future health, see Helling v. McKinney, 509 U.S. 25, 33 (1993).

Construed liberally, the complaint fails to allege sufficient facts to support an Eighth Amendment claim for the denial of adequate medical care.  First, Picard has not

identified a serious medical need or condition.  He has not alleged that he suffered an allergic reaction to a tuberculosis screening test administered by HCDOC officials.  Nor has he alleged exposure to tuberculosis or any other communicable disease or that his future health has been unreasonably endangered.  Second, he has not demonstrated deliberate indifference with regard to the defendants.  Even assuming defendants improperly relied upon a 2002 chest x-ray, there is no indication that they knew of any "substantial risk of serious harm" to Picard and disregarded that risk by failing to take reasonable measure to abate it.  See Farmer, 511 U.S. at 847.  Picard has not alleged that defendants knew of any diagnosed active cases of tuberculosis at the HCDOC or other conditions that would have created a risk of infection.  Even if Picard were exposed to tuberculosis during his incarceration at the HCDOC, the failure of medical department officials to detect an active case of tuberculosis would amount to, at most, negligence, which is not actionable under Section 1983.  See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001) (prison officials did not act with subjective deliberate indifference by refusing detainee's request for tuberculosis skin test, even though detainee subsequently tested positive for tuberculosis).  I conclude

therefore that Picard has failed to state an Eighth Amendment claim premised upon the denial of adequate medical care and recommend that this claim be dismissed (Count I).

### 2. Excessive Use of Force

Picard alleges that while he was being transported from his cell in Housing Unit 1-E on May 8, 2005, Richards abridged his Eighth Amendment rights by subjecting him to excessive and unjustified use of force (Count II).

Unjustified force itself does not rise to the level of constitutional violation. See Fleming v. Multnomah County, No. 03-462, 2004 WL 1211924, slip. op at *3, (D. Or. June 1, 2004). To state an Eighth Amendment claim for the use of excessive force by prison officials, an inmate must demonstrate "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319-20 (1986). The primary issue is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. See Hudson v. McMillian, 503 U.S. 1, 7 (1992)(citing Whitley, 475 U.S. at 320-21). To prevail on an excessive force claim, a plaintiff must show that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable. Hudson, 503 U.S. at 8; accord United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).

An excessive force claim may be established even if the plaintiff does not suffer serious or significant injury, if he can demonstrate that the amount of force used is more than de minimis, or otherwise involves force "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10.

On May 8, 2005, Balles allegedly charged Picard with refusing to lock-down and directed a response team to remove him from his cell and transport him to another unit for purposes of awaiting a disciplinary hearing. The response team included Williams, Whitney and Richards. Richards cuffed Picard and Whitney shackled him. Although Picard offered to cooperate, Richards forced his hands up toward his lower back, causing him pain, and stated "Shut up or I will hurt you more." Whitney purportedly remained silent during the entire episode and the record is silent as to whether he or Williams observed Richards' actions. While Picard was being transported, Richards allegedly continued to inflict pain on him despite his cooperation. When Picard explained to Richards that he was not resisting, Richards applied greater pressure, thereby causing Picard more pain. Nothing in the record suggests that Picard inflicted harm on others or otherwise provoked the use of force or posed an immediate threat to the safety of the corrections officers or

security of the prison.

After Richards transported Picard to the medical unit to await his hearing, Picard was uncuffed. He requested to see a nurse and was given Motrin and Tylenol to treat his bleeding and swollen wrist. He received further treatment on May 13, 2005 by Nurse Jane Doe who advised Picard of the possibility that he had nerve damage. On June 6, 2005 he was evaluated by Dr. Ward who gave him additional Tylenol and explained that "nerve problems take awhile to go away." If true, these allegations may well give rise to an Eight Amendment excessive force claim against Richards (Count II).

### 3. Failure to Protect

Construed liberally, the complaint alleges that defendants abridged Picard's Eighth Amendment rights by placing him in danger and failing to protect him from attack or threat of attack by other inmates (Count IV).

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other prisoners. See Farmer, 511 U.S. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison

officials responsible for the victim's safety."  Id. at 834. "Rather, liability attaches only when two requirements are met". Espaillat v. Mousseau, Civ. No. 03-338-SM, 2004 WL 2915287, slip op. at *2 (D.N.H. Dec. 16, 2004).  First, the alleged deprivation must be objectively serious, that is, showing that the inmate is incarcerated under conditions posing a substantial risk of serious harm.  See Burrell v. Hampshire County, 307 F.3d 1, 7-8 (2002).  Second, the official involved must have had a sufficiently culpable state of mind, described as "deliberate indifference" to inmate health or safety.  Id.  "[A] prison official 'cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Espaillat, Civ. No. 03-338-SM, 2004 WL 2915287, slip op. at *2 (citing Farmer, 511 U.S. at 837).

    Picard first alleges that while he was in protective custody on or about June 2-6, 2005, a general population inmate named Perez came to his cell door and stabbed him with a pencil.  He has not identified the nature and extent of his injury, if any,

that resulted from the attack.  Nor has he identified a particular officer or actions taken by a particular officer that caused him to be subjected to a serious or unreasonable risk of harm.  Picard next alleges that on June 6, 2005, his cell door was mistakenly unlocked and a general prison population inmate named Mann attempted to kick-in his door and attack him.  Again, he has not identified any officer that failed to adequately protect him.  Nor has he alleged that any officer knew of and disregarded an excessive risk to his health or safety.  With regard to both incidents, I conclude that Picard has not adequately alleged the requisite deliberate indifference on the part of a particular officer.  Accordingly, I find that he has failed to allege sufficient facts to state an Eighth Amendment failure to protect claim for purposes of surviving preliminary review and therefore recommend dismissal of this claim (Count IV).

    B.   <u>First Amendment Claims</u>

        1.   Disciplinary Retaliation

Picard alleges that defendants abridged his First Amendment rights by subjecting him to excessive force and denying him a certain classification or status, all in retaliation for his filing a civil rights action against the HCDOC (Count III).

"[I]t is well-established that prison officials must provide inmates access to the courts, and prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts." Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir. 1996)(internal citations omitted). The First Circuit has recognized that retaliation against an inmate for the exercising his right of access to the courts violates his First Amendment rights. See Ferranti v. Moran, 618 F.2d 888, 891-92 (1st Cir. 1980)("[A]ctions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms."). To prevail on a claim of retaliation, Picard must show that: (1) he had a First Amendment right; (2) defendants took an adverse action against him; (3) with the intent to retaliate against him; and (4) the retaliatory act caused the injury for which he is seeking relief. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999); McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

Picard alleges that Classification Supervisor William Raymond denied him a certain classification or status in retaliation for his prosecution of civil rights actions against the HCDOC. To the extent the decision to deny Picard a classification was made in reprisal for his exercise of

constitutionally protected First Amendment freedoms, he has alleged sufficient facts for purposes of preliminary review to establish a retaliation claim.  Picard further alleges that Richards used excessive and unjustified force against him, as described above, in retaliation for his filing of a civil rights action against the HCDOC.  If true, Picard's allegations may well give rise to viable First Amendment retaliation claims against Raymond and Richards (Counts II and III).  Because Picard has failed to allege sufficient predicate facts in support of his First Amendment claims against O'Mara, Dickerson, Shultz, Gordon, Cruze, Grizil, Richards and John Doe, I recommend dismissal of the claims against them.

## II.   Municipal Liability

Construed liberally, the complaint names the HCDOC, a municipal entity, as a defendant in this action.  Municipalities and local government entities are "persons" within the meaning of Section 1983.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  A municipal entity cannot be held liable under Section 1983 on a theory of *respondeat superior* or vicarious liability; rather the municipality itself must proximately cause the constitutional injury, through promulgation or tacit approval

of a policy or custom.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).  To state a viable Section 1983 claim, a plaintiff must allege in substance that the challenged municipal custom or policy was the "moving force" behind the constitutional violations.  See Board of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); McCabe v. Life-Line Ambulance Serv., 77 F.3d 540, 544 (1st Cir. 1996).

If Picard intends to pursue claims against the HCDOC he must, at a minimum, allege that his constitutional deprivations were the product of a municipal custom or policy.  Even liberally construing the complaint, I cannot reasonably conclude that the wrongful conduct ascribed to the defendants was the product of any unconstitutional municipal custom or policy.  Instead, the complaint plainly alleges that the wrongful conduct to which Picard was subjected resulted from the actions taken by individual defendants and not as the result of a policy statement, ordinance, regulation or officially adopted decision. See Monell, 436 U.S. at 690.  Nothing in the complaint demonstrates how the HCDOC was the "moving force" behind the actions or omissions by the defendants.  Accordingly, I conclude that the complaint fails to state a viable claim premised upon municipal liability and, therefore, recommend that the HCDOC be

dismissed from this action.

Construed liberally, the complaint names each defendant in his official capacity as an officer or employee of the HCDOC. Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. See also Brandon v. Holt, 469 U.S. 464, 471 (1985)(suits against parties in their official capacities treated as suits against the municipality). Because I find no municipal liability as to the HCDOC, I extend that reasoning to the remaining defendants and conclude that the official capacity claims against them fail.

## Conclusion

For the reasons stated above, I find that Picard has alleged an Eighth Amendment excessive force claim against Richards (Count II) and First Amendment retaliation claims against Raymond and Richards (Counts II and III). I recommend dismissal of all remaining claims.

Picard's motion for reconsideration (document no. 15) is denied as moot as he is no longer incarcerated and has failed to show cause why his request for preliminary injunctive relief should be granted.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                              _____
                                              James R. Muirhead
                                              United States Magistrate Judge

Date: October 21, 2005

cc:   Warren R. Picard, *pro se*

17